IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$547,282.06 IN UNITED STATES CURRENCY,

    Defendant.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***
_____

The United States of America ("United States"), by and through United States Attorney Peter McNeilly and Assistant United States Attorney Zachary Phillips, pursuant to Supplemental Rule for Admiralty, Maritime and Asset Forfeiture Actions G(2), states:

JURISDICTION AND VENUE

1.    The United States has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C), seeking forfeiture of defendant $547,282.06 in United States currency based upon violations of 18 U.S.C. § 2314 (Transportation of Stolen Goods), 18 U.S.C. § 2315 (Sale or Receipt of Stolen Goods), 18 U.S.C. § 1952(a) (Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises), 18 U.S.C. § 1956(a)(1)(A)(i) (Laundering of Monetary Instruments), and 18 U.S.C. § 1957(a)(b) (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

1

2. Venue is proper under 28 U.S.C. § 1395, as the defendant property is located and the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is more fully described as follows:

   a. Defendant $547,282.06 in United States currency was seized on June 10, 2024, in Weld County, Colorado, via a wire transfer from BASF Environmental Catalyst and Metal Solutions, LLC, and is currently in the custody of the United States Marshals Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

## BACKGROUND

5. In November 2020, the Tulsa Police Department began an investigation into organized catalytic converter thefts in Northeast Oklahoma, where individuals were stealing catalytic converters and selling them to intermediate buyers to be resold in bulk to companies that "de-can" the catalytic converters, (remove the outside hardware) and then deliver the core material, which contains a number of precious metals, to companies that further process and refine the metals for future sale.

6. The following businesses, owners, and operators were identified through the investigation as involved in the criminal conspiracy:

| Company | Location | Owner/Operator |
|---|---|---|
| **Elevation Auto Core LLC** | Colorado | Julian Baros (Owner and Operator) |
| | Nevada | Patrick Santoyo (Operator) |
| **Curtis Cores LLC** | Oklahoma | Tyler Curtis (Owner and Operator) |
| **DG Auto LLC** | New Jersey | Navin Khanna (Owner and Operator) |
| **Capital Cores Corp.** | New York | Adam Sharkey (Owner and Operator) |
| **Cotton Cores LLC** | Minnesota | John Kotton (Owner and Operator) |
| **Dowa Metals & Mining America, Inc.** | New Jersey | Dowa Holdings (Operator) |
| **Green Country Auto Core** | Oklahoma | David Edwards (Operator) |
| **CJ Metals** | Texas | Christopher Jennings (Operator) |

4. Since December 2020, agents with Homeland Security Investigations (HSI) observed bulk catalytic converters delivered to Curtis Cores LLC ("Curtis Cores"), and repackaged and transported to other intermediate buyers, including Elevation Auto Core LLC, in Colorado.

5. From there, Elevation Auto Core de-canned the stolen catalytic converters and delivered the core material of precious metal powder to a company called BASF Environmental Catalyst and Metal Solutions, LLC ("BASF") in Caldwell, Texas.

6. Because Elevation Auto Core had an exclusive contract with BASF that provided them lucrative term rates on the delivered material, couriers of the de-canned powder, whether they were employees of Elevation Auto Core or not, signed paperwork portraying themselves as Elevation Auto Core employees when they entered BASF.

7. These couriers did not receive a cash payment at the time of delivery. Instead, BASF sent a wire transfer to Elevation Auto Core later.

8. BASF would then further process and refine these metals for future sale.

## **INVESTIGATION**

9. During the investigation, investigators with HSI, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), the Colorado Bureau of Investigation (CBI),

and the Weld County Sheriff's Office (WCSO), conducted surveillance, interviews, and undercover operations of Elevation Auto Core. Through the course of the investigation, law enforcement discovered that Elevation Auto Core was a large-scale buyer of stolen catalytic converters from Curtis Cores.

10. Elevation Auto is owned and operated by Julian Baros ("Baros").

11. On May 3, 2022, Shane Minnick, an employee of Curtis Cores in Oklahoma, delivered a bulk load of stolen catalytic converters in a rented U-Haul to Baros at Elevation Auto in Brighton, Colorado.

12. After delivering the catalytic converters to Baros at Elevation Auto, Minnick flew back to Tulsa, Oklahoma, where he was detained by HSI agents upon arrival. HSI seized $500,000 in U.S. currency from Minnick.

<u>Phone Intercepts</u>

13. On May 9, 2022, Curtis and Baros discussed over the phone methods to conceal transported catalytic converters driven from Oklahoma to Colorado, such as covering trailers with tarps to hide the stolen goods.

14. Between May 12 and 13, 2022, Curtis and Baros discussed their mutual business associate, John Kotten, and his activities. John Kotton was identified by law enforcement as delivering stolen catalytic converters to both Curtis and Baros.

15. Kotton had previously told Curtis that he was nervous because law enforcement had conducted photo lineups of him and local thieves known to steal catalytic converters.

16. Curtis told Baros that Kotten said he would not receive any wire transfers for fear of law enforcement seizing the funds and would only receive payment in cash.

17. Curtis asked Baros if he thought that law enforcement was listening to them, and Baros said he did not. Curtis said he was hiding his money from now on.

18. Curtis and Baros also discussed the movement of funds, as Curtis was known to have difficulties withdrawing large sums of cash from his bank accounts due to restrictions. Baros informed Curtis that he can withdraw as much cash as Curtis needed from his Wells Fargo account and deliver it through Loomis (a cash in transit service provider). Curtis replied that he was scared to take too much cash at the time. Baros informed Curtis that he had $700,000 in cash available. Baros recommended that Curtis contact Santoyo (the manager of Elevation Cores Nevada) about picking up cash from the Las Vegas location.

19. On June 6, 2022, Curtis spoke to Baros and requested that he provide an Elevation Auto truck for a delivery to BASF. Curtis said that the alternative was to rent a U-Haul and purchase a plane ticket to fly back. Previously, Curtis had discussed with Baros his fear of law enforcement and apprehension at driving personally owned vehicles to deliver catalytic converters.

<u>Undercover Sales</u>

4. On October 5, 2022, a confidential informant (CI) was used to conduct a sale of catalytic converters at Elevation Auto Core. An employee of Elevation Auto Core purchased the two catalytic converters for $570.

5. On October 12, 2022, the CI was given four catalytic converters to sell to Elevation Auto Core which had obvious jagged cuts as if they were cut off by thieves. An employee of Elevation Auto Core purchased the catalytic converters for $340.

6. On March 21, 2023, the CI was given thirteen catalytic converters to sell to Elevation Auto Core, which were purchased by an employee for $3,015.

Witness Interviews

7. The following Rule 11 interviews were conducted by HSI in conjunction with the IRS and the United States Attorney's Office, Northern District of Oklahoma.

I. Shane Minnick

8. On December 12, 2022, Shane Minnick, an employee of Curtis Cores, stated that the couriers transporting the stolen catalytic converters were given pre-planned narratives to use if they were ever pulled over by law enforcement.

9. Minnick also said that the standard operating procedure was to rent a U-Haul to deliver the catalytic cores to Elevation Auto and then return by plane with the cash.

10. Minnick said the couriers delivered to BASF in Caldwell, Texas, using Baros' information. Specifically, that they would have to sign paperwork as Elevation Auto employees when they entered the business.

11. Minnick said they would only deliver de-canned powder to BASF, not intact catalytic converters, and would later receive a wire transfer for their services.

II. Tyler Curtis

12. On March 7, 2023, Tyler Curtis was asked to elaborate on Baros' knowledge that the catalytic converters he received were stolen. Curtis described the condition the goods were in when Baros received them. The deliveries often contained hundreds of catalytic converters that were spray painted (a tactic to deter theft).

13. Curtis also said that Baros bought catalytic converters from Green County Auto Core in Oklahoma and another customer in California which dealt in stolen catalytic converters.

14. Further, Curtis told investigators that he knew Kotten had told Baros about the thieves that Kotton bought stolen catalytic converters from, and Baros continued to work with Kotten anyway.

III. <u>John Kotten</u>

15. On September 19, 2023, John Kotten admitted to investigators his knowledge of purchasing stolen catalytic converters. Kotten estimated that he conducted between $4,000,000 and $5,000,000 in transactions from 2019 to 2023.

16. Kotten said that the appearance of the stolen goods brought to Baros were often indicative that they were stolen. Often the catalytic converters were shiny and new, which is uncommon. Mostly catalytic converters in the region rusted quickly from weather conditions. Therefore, these catalytic converters were most likely from new vehicles.

17. Kotten said another indicator that the goods were stolen was the deliveries of "high grade" catalytic converters, which were most commonly stolen from Hyundai, Kia, and Toyota vehicles.

**FINANCIAL INVESTIGATION**

18. Colorado state tax records were obtained from the Colorado Department of Revenue pertaining to Elevation Auto Core.

| Tax Year | Gross Sales | Cost of Goods Sold |
|---|---|---|
| 2019 | 7,670,308 | 6,529,064 |
| 2020 | 18,010,325 | 17,736,864 |
| 2021 | 44,333,214 | 43,791,475 |
| 2022 | 58,592,882 | 57,691,560 |

19. From approximately February 2021 through October 2022, Elevation Auto paid over $6 million via wire transfers to Curtis Cores, DG Auto, Capital Cores, and Kotten Cores combined.

20.     From approximately February 2021 through October 2022, Elevation Auto Core received over $89 million from recyclers of catalytic converters, including over $85 million from BASF.

21.     According to Financial Crime Enforcement Network (FinCEN) Currency Transaction Reports (CTRs), from January 2021 through November 2023, Elevation Auto Core employees made regular cash withdrawals exceeding a total of $61 million.

22.     A comparison to cost of goods sold reported on tax returns for 2021 and 2022 in relation to the purchase of catalytic converters via wire transfer and check indicates a significant portion of catalytic converters purchased by Elevation Auto Core were purchased via cash payments.

Wells Fargo Bank Account Ending in 8105

23.     Wells Fargo bank account #3449348105 ("WF bank account 8105") was opened in January 2018 in the name of Elevation Auto Core LLC with Julian Baros as a signer for the account. This was the primary business account for Elevation Auto from February 2021 through approximately July 2023 during which time wire transfers were received from BASF of more than $85 million.

24.     WF bank account #8105 was used to pay vendors, including Curtis Cores LLC.

25.     WF bank account #8105 was also used to facilitate payments to others known to sell stolen catalytic converters as part of the Curtis conspiracy that operated from approximately December 2020 through November 2022 including over $3 million to Curtis, over $1 million to DG Auto, over $1 million to Capital Cores, and over $200,000 to Kotten Cores.

Bank of Colorado Account #4355

26. Bank of Colorado account #1300484355 ("Bank of Colorado account 4355") was opened on July 19, 2023, in the name of Elevation Auto Core LLC with Julian Baros, Nicholas Handley, and Devin Garcia as signers for the account.

27. The initial funds deposited to the account was $10,000 cash.

28. Bank of Colorado notified Baros on October 26, 2023, that they were closing Bank of Colorado account #4355 due to unacceptable activity in the account.

29. During the period Bank of Colorado account 4355 was open, wire transfers were received from BASF totaling over $1.7 million.

30. The funds in Bank of Colorado account #4355 were used to facilitate cash withdrawals over $370,000 and payments of more than $700,000 to catalytic converter venders.

31. Bank of Colorado account #4355 was closed on October 31, 2023, after a large cash withdrawal.

Defendant $547,282.06 in U.S. Currency

32. On December 13, 2023, a search warrant was executed at Elevation Auto Core at 854 Baseline Place, Brighton Colorado.

33. Over 70 pallets of catalytic converters and de-canned catalyst from catalytic converters were seized from the Elevation Auto Core, as well as machinery was that was used to break apart catalytic converters and remove the inner catalyst material containing the valuable platinum group metals.

34. Also on December 13, 2023, Baros was arrested leaving his residence with a backpack containing over $13,000 in U.S. currency and a firearm.

35. An Elevation Auto Core customer account existed at BASF Environmental Catalyst and Metal Solutions, LLC under the control of Baros.

36. Subsequent to the execution of search warrants related to this investigation in Colorado and Nevada, BASF informed investigators that it was in possession of several lots of materials that had been shipped and/or delivered by Elevation Auto Core. BASF also indicated that it had payables coming due to Elevation Auto Core for prior shipments of materials that had been delivered and processed. BASF explained that, based on their contract, BASF pays for the materials at various stages of processing.

37. Accordingly, BASF owed Elevation Auto Core payment for materials it had received prior to December 13, 2023. Defendant $547,282.06 in United States currency was one such payment.

38. On June 10, 2024, a federal seizure warrant was executed for defendant $547,282.06 in United States currency from BASF.

## RELATED CRIMINAL CASE

39. On December 11, 2024, Julian Baros pleaded guilty to theft and tax evasion in related Weld County Criminal Case No. 2023CR001994.

40. Additionally, Baros agreed to pay the Colorado Department of Revenue $750,000 in restitution.

## CONCLUSION

41. As stated above, $547,282.06 in United States currency constitutes proceeds of violations of Title 18 U.S.C. §§ 1952, 1956, 1957, 2314, 2315, and/or proceeds involved in violations of Title 18 U.S.C. §§ 1956, 1957 or conspiracy to commit

the same.  Accordingly, defendant $547,282.06 in United States currency is subject to forfeiture pursuant to Title 18 U.S.C. §§ 981(a)(1)(A) and (C).

### CERTIFICATION OF TRAVIS MCFARREN
### SPECIAL AGENT, HOMELAND SECURITY INVESTIGATIONS

I, Special Agent Travis McFarren, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

*s/Travis McFarren*
Travis McFarren
Special Agent – HSI

### FIRST CLAIM FOR RELIEF

42.     The Plaintiff repeats and incorporates by reference the paragraphs above.

43.     By the foregoing and other acts, defendant $547,282.06 in U.S. currency constitutes proceeds involved in violations of 18 U.S.C. §§ 1956 and 1957 and therefore is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### SECOND CLAIM FOR RELIEF

44.     The Plaintiff repeats and incorporates by reference the paragraphs above.

45.     By the foregoing and other acts, defendant $547,282.06 in U.S. currency constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 1952, 2314, and 2315, and therefore is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for defendant $547,282.06 in U.S. currency in favor of the United States, that the United States be authorized to dispose of defendant $547,282.06 in U.S. currency in accordance with law, and that the Court enter a finding of probable cause for the seizure of defendant $547,282.06 in U.S. currency and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 29th day of December 2025.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

By: *s/Zachary Phillips*
Zachary Phillips
Assistant United States Attorney
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0405
E-mail: Zachary.Phillips@usdoj.gov
*Attorney for the United States*